UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK KARL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No: 05 C 6632 |
| | ) Judge John W. Darrah |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Frank Karl, brought a claim against Defendant, the City of Chicago, alleging that the Defendant violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. A claim under the FMLA for wrongful termination can be brought under either a interference/entitlement theory, 29 U.S.C. § 2615(a)(1)-(2), or a retaliation theory, 29 U.S.C. § 2615(b). *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 20005). Plaintiff asserts both. Currently before the Court is the Defendant's Motion for Summary Judgment. For the following reasons, Defendant's motion is granted.

## FACTS[1]

Plaintiff was employed by the City of Chicago Department of Streets and Sanitation as a Seasonal Laborer from 1998 until his termination on January 15, 2004. (Def.'s 56.1 Facts ¶¶ 3, 6). Plaintiff worked full-time. (Def.'s 56.1 Facts ¶ 3).

---

[1] Defendant moved to strike portions of Plaintiff's 56.1(b)(3)(B) statements of additional facts, Plaintiff's response to Defendant's statement of material facts, and the affidavits offered in support. Specifically, Defendant asserts that Planitiff failed to comply with the applicable Local Rule because the affidavits contain inadmissible hearsay, are unsupported by the facts, and/or lack proper foundation. To the extent Plaintiff's statements and responses violate Local Rule 56.1, they have been disregarded.

1

The Department of Streets and Sanitation employs two types of workers: Seasonal Laborers and Career Service. Seasonal Laborers are not entitled to the same rights and benefits as Career Service employees pursuant to the City of Chicago Personnel Rules and the Collective Bargaining Agreement ("CBA"). (Def.'s 56.1 Facts ¶ 11). For example, Seasonal Laborers are not entitled to paid sick leave pursuant to the CBA. (Def.'s 56.1 Facts ¶ 13). However, both Seasonal Laborers and Career Service employees are entitled to accrue vacation time (Seasonal Laborers begin to accrue vacation time after one year of employment); and both may designate and use five of their accrued vacation days as sick days. (Def.'s 56.1 Facts § 13). Seasonal Laborers are employed "at-will," and they may be disciplined or discharged at any time for any reason or for no reason at all. (Def.'s 56.1 Facts ¶ 14). Career Service employees are entitled only to be discharged for cause and must be afforded a pre-disciplinary hearing and the right to appeal the termination to the Personnel Board. (Def.'s 56.1 Facts § 14).

Prior to August 2002, Plaintiff informed Debbie Pucillo, who was a Refuse Collection Coordinator II with responsibility for Seasonal Laborers payroll, that Plaintiff's mother had cancer and that he would need to take time off to take care of her. (Def.'s 56.1 Facts ¶ 20). On August 16, 2002, Plaintiff applied for and received an intermittent medical leave of absence from September 9, 2002 to December 8, 2002, to assist in the care of his mother. (Def.'s 56.1 Facts ¶ 21). Plaintiff submitted his August 2002 request for leave to Katherine Torres, who was the Administrative Services Officer II and who had responsibility for handling duty-disability and medical-leave paperwork. (Def.'s 56.1 Facts ¶ 22-23). Plaintiff provided a medical note on the letterhead of Cancer Treatment Centers of America to Torres to verify his mother's condition. (Def.'s 56.1 Facts ¶ 23). Torres informed some employees who applied for FMLA

2

leave that they are required to submit a doctor's note on letterhead, not a prescription pad, in order to initiate FMLA leave. (Def.'s 56.1 Facts ¶ 24). Plaintiff thereafter took a leave of absence from September 9 through 23, 2002, to assist his mother with her treatment and provided medical documentation to the Defendant. (Def.'s 56.1 Facts ¶ 24). Plaintiff requested and received leave for the period between October 16, 2002 through December 12, 2002; and Plaintiff's absences were excused during this time period. (Def.'s 56.1 Facts ¶ 24). On March 14, 2003, Plaintiff submitted a second application for intermittent family medical leave of absence covering the dates March 10, 2003 to June 9, 2003. (Def.'s 56.1 Facts ¶ 25). The application stated that the reason for the request was to take his mother for treatment once a month on Tuesdays. (Def.'s 56.1 Facts ¶ 25). Plaintiff's mother passed away on June 17, 2003. (Def.'s 56.1 Facts ¶ 28).

A review of the time and attendance records of all of the Department of Streets and Sanitation Seasonal Laborers was initiated to determine if there was excessive absenteeism among employees during the period of July 1, 2002 through November 1, 2003. (Def.'s 56.1 Facts ¶ 53). Once the initial review was completed, the findings were given to Catharine Hennessy, the Assistant Commissioner in the Department's Legal Section. (Def.'s 56.1 Facts ¶ 53). Hennessy was presented with a list of eight or nine employees with more than ten unexcused absences who were up for possible discharge for excessive absenteeism because they were in violation of the so-called "Ten-Day Rule". (Def.'s 56.1 Facts ¶ 54). On January 15, 2004, as a result of this review, Plaintiff was terminated. Eight other Seasonal Laborers were discharged on January 15, 2004, for having accrued ten more absences. (Def.'s 56.1 Facts ¶ 54).

Defendant claimed that Plaintiff was terminated because he had excessive unexcused absences between July 1, 2002 and November 1, 2003. (Def.'s 56.1 Facts ¶ 34). The following 18 dates were counted as the basis for Plaintiff's termination: July 1, 2002; October 11, 2002; February 11, 2003; March 11, 2003; April 28, 2003; May 29, 2003; May 30, 2003; June 9, 2003; June 10, 2003; June 18, 2003; July 3, 2003; July 18, 2003; August 21, 2003; September 15, 2003; September 24, 2003; September 25, 2003; September 26, 2003; and October 27, 2003. (Def.'s 56.1 Facts ¶ 35). Plaintiff asserts that 6 of those dates – February 11, 2003; March 11, 2003; May 29, 2003; May 30, 2003; June 9, 2003; and June 10, 2003 – were dates that should have been covered under the FMLA.[2] (Def.'s 56.1 Facts ¶ 37). Plaintiff asserts that other days counted in the Ten-Day Rule should be considered excused. Plaintiff was absent from work on June 18, 2003, due to the death of his mother. (Pl.'s 56.1(b)(3)(B) ¶ 78). Further, Plaintiff was sick on September 24, 25, and 26, 2003, and submitted medical documentation to his supervisor. (Pl.'s 56.1(b)(3)(B) ¶ 81). Although these September 2003 dates were not covered under his FMLA leave, Plaintiff believes these dates should be considered excused because he provided a doctor's note to Defendant. (Def.'s 56.1 Facts ¶ 39).

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 (c) when no genuine issue of material fact exists or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

---

[2] Plaintiff lists these six dates as being "among other dates" which were taken pursuant to Plaintiff's FMLA leave requests. However, Plaintiff does not allege or demonstrate, through specific evidence, that any of the other twelve dates were, or should have been, related to his FMLA leave. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (*Celotex*) (holding that plaintiff must provide specific evidence).

4

*Inc.*, 477 U.S. 242, 248 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

One of the "principal purposes" of awarding summary judgment is to "isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477 U.S. at 323. Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court that there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson*, 477 U.S. at 254-56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

## ANALYSIS

Plaintiff's Complaint alleges that Defendant's actions constituted a violation of 29 U.S.C. § 2615(a), (b) because its actions interfered with his rights under the FMLA.

To be covered under the ambit of the FMLA, an employee must prove that he worked at least 1,250 hours during the twelve-month period prior to commencement of the desired leave. 29 U.S.C. § 2612(a)(1)(D). Defendant, as a covered employer, cannot: "interfere with, restrain, or deny the exercise of or attempt to exercise any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1); "discharge or in any other manner discriminate against any individual for

5

opposing any practice made unlawful" by the FMLA, 29 U.S.C. § 2615(a)(2); or "discharge or in any other manner discriminate against any individual because such individual . . . has filed any charge, or has instituted or caused to be instituted any proceeding" related to his FMLA rights, 29 U.S.C. § 2615(b)(1).

The FMLA entitles an eligible employee to up to twelve weeks of leave during any twelve-month period "in order to care for," *inter alia,* a "parent, of the employee, if such . . . parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(c). FMLA leave may be taken "intermittently or on a reduced leave schedule" under certain circumstances. "Intermittent leave may be taken for a serious health condition which requires treatment by a health care provider periodically, rather than for one continuous period of time, and may include leave of periods from an hour or more to several weeks," which may be "taken on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such as for chemotherapy." 29 C.F.R. § 825.203 (c)(1).

An employer may require certification issued by the health care provider of the eligible "parent of the employee." 29 U.S.C. § 2613(a). However, if such certification is required, the employer must give the employee at least fifteen calendar days in which to submit the documentation. 29 C.F.R. § 825.305. If an employee fails to submit the requisite proper documentation to his employer, the employee is not entitled to leave under the FMLA. *See Rager v. Dade Behring, Inc.*, 210 F.3d 776, 778 (7th Cir. 2000).

The Plaintiff first asserts that Defendant violated Plaintiff's substantive rights under the FMLA rights by interfering with or restraining the exercise of or attempt to exercise his rights provided by the FMLA, 29 U.S.C. § 2615(a)(1), and by discharging him for taking leave

6

protected by the FMLA, 29 U.S.C. § 2615(a)(2). The employer violates the FMLA if it interferes with the employee's substantive FMLA rights, regardless of the employer's intent. *Nevada Dep't of Human Rights v. Hibbs*, 538 U.S. 721 (2002).

Plaintiff asserts that Defendant interfered with his FMLA rights by failing to advise Plaintiff of his right to apply for FMLA, assigning arbitrary dates to the expiration of the FMLA leave, failing to code many of Plaintiff's absences as FMLA dates, making unreasonable requests for documentation, and using several approved FMLA dates against Plaintiff as a basis for his termination. As a result of these acts and omissions, according to the Plaintiff's theory, many of Plaintiff's FMLA absences were deemed to be unexcused and then counted against him when he was terminated.

An employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies," 29 C.F.R. § 825.22(c), nor otherwise interfere with an employee's rights under the FMLA. However, an "employee is not afforded greater rights than he would otherwise have merely because he takes FMLA leave." *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003). Further, an employee is not entitled to relief under the FMLA unless the employee has been prejudiced by the violation of the FMLA. "The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered." *Harrell v. United States Postal Service*, 445 F.3d 913, 929 (7th Cir. 2006).

Here, the Plaintiff was not harmed by the Defendant's conduct in violation of the FMLA but because of Defendant's rule regarding excessive absences as a basis for discharge. Plaintiff was eligible for discharge for ten unexcused absences between July 1, 2002 and November 1, 2003. The City determined that the Plaintiff had 18 unexcused absences[3], which are listed as follows:

| | |
|---|---|
| July 1, 2002 | July 3, 2003 |
| October 11, 2002 | July 18, 2003 |
| February 11, 2003 | August 21, 2003 |
| March 11, 2003 | September 15, 2003 |
| April 28, 2003 | September 24, 2003 |
| May 29, 2003 | September 25, 2003 |
| May 30, 2003 | September 26, 2003 |
| June 9, 2003 | October 27, 2003 |
| June 10, 2003 | |
| June 18, 2003 | |

Plaintiff asserts that 6 of those dates – February 11, 2003; March 11, 2003; May 29, 2003; May 30, 2003; June 9, 2003; and June 10, 2003 – were dates that should have been covered under the FMLA. Defendant asserts that the Plaintiff had not provided correct documentation for the six days contested by the Plaintiff. Plaintiff does not contest that twelve of these eighteen absences are unrelated to the FMLA. However, construing the facts in the light most favorable to the Plaintiff, and assuming all six days should have been considered excused leave under the

---

[3] Plaintiff asserts he was initially told that he had twenty-eight unexcused absences. Plaintiff's response to Defendant's motion for summary judgment includes discussion of many of the twenty-eight days allegedly counted as unexcused absences. The Defendant disputes that Plaintiff was ever told that he was being terminated because he had twenty-eight unexcused absences and asserts that Plaintiff's Rule 56.1(b)(3)(B) statement in this regard was based on inadmissible hearsay. The Defendant concedes that Plaintiff was terminated for allegedly having eighteen unexcused absences. The Court has reviewed the supporting documentation provided by Plaintiff and strikes the Plaintiff's Rule 56.1(b)(3)(B) statement to the extent that it contains inadmissible hearsay. Thus, only the 18 dates listed above are considered by the Court.

FMLA, Plaintiff still cannot establish that he would not have been discharged if he had only twelve, rather than eighteen, excused absences. Thus, because Plaintiff cannot establish that his discharge was "by reason of" or as "a direct result of" violation of his substantive FMLA rights, summary judgment in favor of the Defendant is granted as to Plaintiff's claim under 29 U.S.C. § 2615(a)(1)-(2).

Plaintiff also asserts that he was terminated in retaliation for seeking rights under the FMLA pursuant to 29 U.S.C. § 2615(b). The FMLA prohibits an employer from discriminating or retaliating against an employee who requests FMLA leave. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). "A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent, while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005); *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).

Plaintiff claims sufficient evidence to withstand summary judgment on both indirect and direct methods. However, Plaintiff points to no specific direct proof; rather, Plaintiff claims circumstantial evidence under the direct method is sufficient for a jury to infer intentional discrimination by the decision maker, citing *Harris v. TNT N. Am., Inc.*, 2005 U.S. Dist. LEXIS 38134 (N.D. Ill. 2005). A review of the purported circumstantial evidence relied upon by the Plaintiff does not point directly to a discriminatory reason for Defendant's actions. To be considered direct evidence of retaliation, there must be a "causal connection" between a plaintiff's discharge and his taking leave under the FMLA. *Haywood v. Lucent Technologies,*

9

*Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Here, there is no such connection. Thus, Plaintiff must proceed in the indirect, burden-shifting method outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

In *McDonnell Douglas*, the Supreme Court established a procedure regarding the order and allocation of proof in cases alleging discrimination. To prove an employer discharged an employee in retaliation for engaging in a protected activity, the complainant must initially set forth a *prima facie* case of prohibited discrimination. *See Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1308-09 (7th Cir.1997) (*Essex*) (noting the requirements for the establishment of a *prima facie* case of retaliatory discharge in violation of Title VII). To establish a *prima facie* case of retaliatory discharge, a plaintiff must establish that: "after filing the charge [or otherwise opposing] the employer's allegedly discriminatory practice only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). This method of establishing a *prima facie* case "requires proof both of similarly situated employees and of the plaintiff's performing his job satisfactorily." *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 902 (7th Cir. 2006). If the plaintiff makes out a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255

(1981) (*Burdine*). The plaintiff, then, has the opportunity to demonstrate that "the proffered reason was not the true reason for the employment decision" and that the employee's participation in the protected activity was, in fact, the real reason for the employment action at issue. *Burdine*, 450 U.S. at 256.

The parties are in agreement that the Plaintiff can satisfy the first two prongs of the *McDonnell Douglas* test: Plaintiff engaged in protected activity (exercising his rights under the FMLA), and Defendant took an adverse employment action against Plaintiff (he was terminated). However, Plaintiff is unable to establish a *prima facie* case because Plaintiff is not able to show that any similarly situated employee who did not file a charge was treated in a different manner. First, Plaintiff asserts that City employees, Aguirre and Doherty, who did not file charges of discrimination were treated differently because they were provided termination hearings. However, unlike Plaintiff, who was an at-will employee, both Aguirre and Doherty are Career-Service employees. As set out above, City Career-Service employees are entitled to progressive discipline procedures, according to the City's Personnel Rules, that are unavailable to at-will employees, like Plaintiff. Thus, Aguirre and Doherty are not similarly situated. Second, Plaintiff asserts that a fellow at-will employee, Pietro Buttitta, who did not file a charge, was treated more favorably because Buttitta was given a termination notice for thirteen unexcused absences but was never terminated. However, the facts, even when viewed in the light most favorable to the Plaintiff, do not support the contention that Buttitta was similarly situated because, unlike the Plaintiff, after receiving his notice of termination, Buttitta provided additional documentation to the City that established that five of his unexcused absences had been improperly counted toward his discharge. When Buttitta's five absences were deducted

11

from the thirteen absences, he had less than ten absences. Plaintiff failed to establish that Buttitta was treated more favorably because at no time did Plaintiff provide documentation to the City that Plaintiff had fewer than ten absences.

Assuming arguendo that Plaintiff were able to make out his *prima facie* case, Defendant's motion for summary judgment would still be granted because Defendant has established a legitimate, non-discriminatory reason for Plaintiff's discharge (Plaintiff's ten or more unexcused absences not related to any FMLA leave); and Plaintiff is not able to establish pretext in this regard by either "presenting direct evidence that the discriminatory reason motivated the employer's decision" or by presenting evidence that "the employer's proffered reason is unworthy of credence, thus raising the inference that the real reason is discriminatory." *Essex*, 111 F.3d at 1310. To show a pretext, a plaintiff must do more than demonstrate that the employer made a mistake or that the employer's reason was not good enough to support its decision. *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 147 (2000). A plaintiff must provide "evidence tending to prove that the employer's reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 303 (7th Cir.1996). Under the *McDonnell Douglas* analysis, a pretext is "a phony reason that the employer offers for engaging in discriminatory conduct." *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th Cir. 1996). "Pretext exists where the ostensible reason for the employment decision is really a lie contrived to mask unlawful discrimination." *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). The Seventh Circuit applies the honest-belief rule: even if the business decision was ill-considered or unreasonable, provided that the decision

maker honestly believed the nondiscriminatory reason given for the action, pretext does not exist. *Crim v. Board of Education of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 541 (7th Cir. 1998).

Here, Plaintiff asserts that the proffered reason, the so-called "Ten-Day Rule," is pretextual because it was an unwritten rule that was not known by all of the City managers. Without more, Plaintiff's assertion falls short of establishing pretext. Hennessy, the Assistant Commissioner in the Department's Legal Section, testified during her deposition regarding the Ten-Day Rule. Eight other Seasonal Laborers in addition to Plaintiff were discharged on January 15, 2004; and Plaintiff offered no proof that those other employees also requested leave under the FMLA. Plaintiff cannot show that the City's proffered reason for his discharge is a lie.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

Date: January 25, 2007

JOHN W. DARRAH
United States District Court Judge

13